**IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
CENTRAL DIVISION**

**K.H. and J.H., as Parents and Next**                                    **PLAINTIFFS**
**Friends of A.H.**

**v.**                                      **Case No. 4:24-cv-01062-LPR**

**PULASKI COUNTY SPECIAL
SCHOOL DISTRICT**                                                **DEFENDANT**

<u>**ORDER**</u>

This is the attorneys' fees and costs portion of a case brought under the Individuals with Disabilities Education Act (IDEA).[1]  Plaintiffs are parents of a disabled student who seek to use their claimed prevailing-party status to receive attorneys' fees and costs in federal court.[2]  Plaintiffs seek a total of $52,015.49 in attorneys' fees and costs.[3]  More specifically, Plaintiffs request $50,319.15 in attorneys' fees and $1,696.34 in costs to recover the expense of litigating two Arkansas Department of Education due process hearings and the present federal case.[4]  For the reasons stated below, the Plaintiffs' Motion for Attorneys' Fees and Costs is GRANTED IN PART and DENIED IN PART.  Accordingly, the Court awards Plaintiffs $25,797.45 in attorneys' fees and $1,696.34 in costs, for a total of $27,493.79.

**I.   BACKGROUND**

Plaintiffs filed several due process complaints with the Arkansas Department of Education alleging that the Pulaski County Special School District denied their child a Free Appropriate Public Education (FAPE) in violation of the IDEA.[5]  Those complaints were heard separately in

---

[1] *See* Compl. (Doc. 1); 20 U.S.C. §§ 1400–1487.

[2] *See generally* Compl. (Doc. 1).

[3] *See* Pls.' Mot. for Att'y Fees and Costs (Doc. 18) at 3.

[4] *See id.* at 1–3.

[5] *See* Compl. (Doc. 1) ¶¶ 8–12, 17–18.

two hearings.[6]  The hearings resulted in two administrative decisions in Plaintiffs' favor.[7]  A few days after receiving the second favorable decision, Plaintiffs brought the two decisions to federal court seeking attorneys' fees and costs as the prevailing party in both due process hearings.[8]  Plaintiffs subsequently filed the instant Motion before the Court seeking $50,319.15 in attorneys' fees and $1,696.34 in costs.[9]

## II. ANALYSIS

### a. Prevailing Party Status

Before calculating attorneys' fees, the Court must address one preliminary issue.  The District agrees that Plaintiffs were the prevailing party in the first administrative hearing.  The District, however, disputes Plaintiffs' prevailing party status as it relates to the second administrative hearing.[10]  In short, the District contends that new facts have come to light, which the District did not know at the time of the second due process hearing.[11]  The District explains that had the District known these facts, "Plaintiffs would not have realized any relief from the second due process hearing and would not have been [the] prevailing part[y]."[12]  Thus, the District concludes, "while Plaintiffs technically received favorable relief . . . and the District complied,

---

[6] *See id.* ¶¶ 12, 18–19.

[7] *See generally* Ex. A (First Administrative Order) to Compl. (Doc. 1) at 11–36; Ex. B (Second Administrative Order) to Compl. (Doc. 1) at 37–83.

[8] *See* Compl. (Doc. 1).  The parties initially asked the Court to review the underlying administrative decisions, but they eventually withdrew those claims.  *See* Pls.' Notice of Voluntary Dismissal Without Prejudice (Doc. 13); Def.'s Mot. to Dismiss Counterclaim Without Prejudice (Doc. 14).  Accepting the request to dismiss the non-attorneys' fees claims, the Court ordered the parties to file a joint proposed scheduling order for handling the attorneys' fees and costs portion of this case.  *See* May 27, 2025 Order (Doc. 15).  Subsequently, the Court agreed to the parties' proposed scheduling order.  *See* Joint Proposed Scheduling Order (Doc. 16) at 1; June 4, 2025 Order (Doc. 17).  And, on June 27, 2025, Plaintiffs timely filed their Motion for Attorneys' Fees and Costs in accordance with the agreed upon timeline.  Pls.' Mot. for Att'y Fees and Costs (Doc. 18).

[9] *See* Pls.' Mot. for Att'y Fees and Costs (Doc. 18) at 2–3.

[10] *See* Def.'s Br. in Supp. of Def.'s Resp. to Pls.' Mot. for Att'y Fees and Costs (Doc. 21) at 3–6.

[11] *Id.* at 4–5.

[12] *Id.* at 6.

such relief was provided on incomplete facts."[13]  Under these circumstances, the District asks the Court to deny Plaintiffs' prevailing party status for the second administrative hearing, and accordingly to deny them related attorneys' fees under the IDEA.[14]

The District's position is wrong.  Plaintiffs are unequivocally the prevailing party.  To be a prevailing party, a litigant must obtain "actual relief on the merits . . . [that] materially alters the legal relationship between the parties by modifying the defendant's behavior in a way that directly benefits the plaintiff."[15]  Here, Plaintiffs undisputably received such relief.  The District admits that, as a result of the second administrative hearing, it was ordered "to pay all of [Plaintiffs' child's] tuition, costs[,] and fees to attend a private school placement at Compass Academy from January 9, 2024[,] through December 31, 2024."[16]  It also acknowledges that it complied with— and did not appeal—that second administrative order.[17]  Thus, Plaintiffs are the prevailing party because they received the relief they sought on the merits and the District provided that tuition- and-cost relief to Plaintiffs' benefit.

The two Eighth Circuit cases that the District cites do not change this result.[18]  True, in both *Drennan* and *Wofford*, the Eighth Circuit affirmed a district court's decision to deny prevailing party status to a party who succeeded at the administrative level.[19]  But the decision to deny prevailing party status in those cases was not (as the District suggests) based on later-

---

[13] *Id.*

[14] *See id.*; 20 U.S.C. § 1415(i)(3)(B)(i)(I) (permitting district courts to "award reasonable attorneys' fees as part of the costs . . . to a *prevailing party* who is the parent of a child with a disability" (emphasis added)).

[15] *Birmingham v. Omaha Sch. Dist.*, 298 F.3d 731, 734 (8th Cir. 2002) (alteration in original) (internal quotation marks omitted) (quoting *Farrar v. Hobby*, 506 U.S. 103, 111–12 (1992)).

[16] *See* Def.'s Br. in Supp. of Def.'s Resp. to Pls.' Mot. for Att'y Fees and Costs (Doc. 21) at 4.

[17] *Id.*

[18] *Id.* at 6 (first citing *Drennan v. Pulaski Cnty. Special Sch. Dist.*, 458 F.3d 755 (8th Cir. 2006); and then citing *Wofford v. N. Little Rock Sch. Dist.*, 788 F. App'x. 415 (8th Cir. 2019)).

[19] *Wofford*, 788 F. App'x. at 416; *Drennan*, 458 F.3d at 756–57.

discovered information that cast doubt on the underlying administrative decisions.  Rather, those cases involved situations where, after receiving a favorable administrative decision, the successful parties did not ultimately receive the relief they were granted.[20]  In *Drennan* and *Wofford*, the plaintiffs failed to take actions that were necessary to secure the granted relief.[21]  Put another way, acquiring prevailing party status requires parties who win at the administrative level to actually use (or benefit from) the granted relief.[22]  In our case, Plaintiffs fully realized the relief they were granted when the District paid the tuition, costs, and fees of the private school placement.  Accordingly, Plaintiffs' status as the prevailing party in both hearings remains intact.

    *b.  Attorneys' Fees*

The IDEA permits district courts to "award reasonable attorneys' fees as part of the costs . . . to a prevailing party who is the parent of a child with a disability . . . ."[23]  To calculate attorneys' fees under the IDEA, courts typically employ the lodestar method.[24]  That method requires "multiplying the number of hours reasonably expended by the reasonable hourly rates."[25]  A court performing this calculation "should exclude hours that were not reasonably

---

[20] *Wofford*, 788 F. App'x. at 416 ("[A]s the relief ordered by the hearing officer required Wofford's action, which he did not take before moving J.W. out of the district and precluding implementation of the relief, Wofford cannot be considered a prevailing party."); *Drennan*, 458 F.3d at 756 ("[T]he Hearing Officer conditioned the limited relief on Drennan discharging certain duties.  Specifically, Drennan was ordered to provide records to the school district so they could be used in formulating a new IEP.  Drennan never discharged these duties and the relief was not received.  Rather, Drennan moved J.R. to another district and none of the relief was implemented.").

[21] *See supra* note 20.

[22] *See supra* note 20.

[23] 20 U.S.C. § 1415(i)(3)(B)(i)(I).

[24] *See Paris Sch. Dist. v. Harter*, 894 F.3d 885, 889 (8th Cir. 2018) ("Where attorney fees are appropriate, courts typically use the 'lodestar' method for calculating a reasonable award.").

[25] *Id.* (internal quotation marks omitted) (quoting *Dindinger v. Allsteel, Inc.*, 853 F.3d 414, 429 (8th Cir. 2017)).

expended . . . ."[26]  And in determining the hourly rates, a court uses "the ordinary rate for similar work in the community where the case has been litigated."[27]

In line with the foregoing legal framework, the Court must now determine the prevailing rates for attorneys and paralegals in Arkansas for IDEA cases.  Plaintiffs contend that the following rates are reasonable in Arkansas: $350 per hour for lead attorney Theresa Caldwell, $250 per hour for co-counsel Clay Fendley, and $100 per hour for paralegal Darlene Hogancamp.[28]  The Court disagrees with all but the proposed paralegal rate.  Reasonable rates for IDEA cases in the Eastern District of Arkansas are $250 per hour for lead counsel, $200 per hour for co-counsel, and $100 per hour for a paralegal.[29]

---

[26] *Vines v. Welspun Pipes Inc.*, 9 F.4th 849, 855 (8th Cir. 2021) (internal quotation marks omitted) (quoting *Childress v. Fox Assocs., LLC*, 932 F.3d 1165, 1172 (8th Cir. 2019)).

[27] *Fish v. St. Cloud State Univ.*, 295 F.3d 849, 851 (8th Cir. 2002) (citing *Emery v. Hunt*, 272 F.3d 1042, 1048 (8th Cir. 2001)).

[28] *See* Pls.' Br. in Supp. of Pls.' Mot. for Att'y Fees and Costs (Doc. 19) at 5–9.  The District does not dispute that $100 per hour is a reasonable rate for a paralegal in Arkansas.  The Court finds that rate to be reasonable.

[29] *See C.W. v. Greenbrier Sch. Dist.*, No. 4:21-cv-00987-BRW, at *4 (E.D. Ark. Feb. 23, 2023) (awarding Ms. Caldwell $250 per hour and Mr. Fendley $200 per hour); *Jacksonville N. Pulaski Sch. Dist. v. D.M.*, No. 4:20-cv-00256-BRW, 2021 U.S. Dist. LEXIS 256673, at *5 (same); *Johnson v. Sims*, No. 2:20-cv-139-DPM, 2020 WL 6585693, at *1 (E.D. Ark. Nov. 10, 2020) (awarding another lead attorney $250 per hour and co-counsel $200 per hour); *B.H. v. Vilonia Sch. Dist.*, No. 4:18-cv-855-DPM, 2020 U.S. Dist. LEXIS 102570, at *1 (E.D. Ark. June 9, 2020) (awarding Ms. Caldwell $250 per hour and Mr. Fendley $180 per hour); *McMinn v. Sloan-Hendrix Sch. Dist.*, No. 3:16-cv-23-DPM, 2018 U.S. Dist. LEXIS 39882, at *3 (E.D. Ark. Mar. 12, 2018) (same); *Surles v. Pocahontas Sch. Dist.*, No. 3:16-cv-183-DPM, 2017 U.S. Dist. LEXIS 155027, at *4 (E.D. Ark. Sep. 22, 2017) (same).  *See also Paris Sch. Dist*, 894 F.3d at 888–89 (affirming rates of $250 per hour for Ms. Caldwell and $200 per hour for Mr. Fendley in the Western District of Arkansas); *S.A. v. Magnet Cove Sch. Dist.*, No. 6:24-cv-6146, at *4 (W.D. Ark. June 3, 2025) (providing the same rates to Ms. Caldwell and Mr. Fendley and listing cases in support of those rates).

Despite these cases, Plaintiffs urge the Court to adopt a higher rate for Ms. Caldwell and Mr. Fendley.  *See* Pls.' Br. in Supp. of Pls.' Mot. for Att'y Fees and Costs (Doc. 19) at 5–9.  Their arguments for doing so are unavailing.  These arguments can be grouped into two buckets.  First, Plaintiffs point the Court to cases where Ms. Caldwell was given a rate of $350 per hour and Mr. Fendley was given a rate of $250 per hour (and to other cases where other similarly situated attorneys were given comparable rates).  *See id.* at 6, 8 (citing *A.W. v. Pulaski Cnty. Special Sch. Dist.*, No. 4:22-cv-00168-JM, 2023 WL 5959496, at *2 (E.D. Ark. Sep. 13, 2023) (awarding Ms. Caldwell $350 per hour and Mr. Fendley $250 per hour)); *id.* at 6–7 (citing *Little Rock Sch. Dist. v. Pulaski Cnty. Special Sch. Dist.*, No. 4:82-cv-866-DPM, 2019 WL 3408892, at *2 (E.D. Ark. July 26, 2019) (awarding $350.00 per hour to lead counsel and $300 to co-counsel for monitoring compliance with desegregation consent decree)); *id.* at 16–17 (citing *Knox Cnty. v. M.Q.*, No. 3:20-cv-00173-DCLC-JEM, 2022 WL 946285, at *3 (E.D. Tenn. Mar. 29, 2022), aff'd, 62 F.4th 978 (6th Cir. 2023) (awarding IDEA counsel $425 per hour)).  The cases awarding Ms. Caldwell and Mr. Fendley a higher rate are outliers.  The vast majority of cases in this district award the rates the Court applies today.  And the cases involving other attorneys are similarly problematic, either because they are not IDEA cases or because they represent rates for IDEA cases in jurisdictions outside of Arkansas.  Recall that, in determining hourly rates, a court uses "the ordinary

5

Next, the Court must evaluate Plaintiffs' claimed hours. In total, Plaintiffs claim lead attorney Theresa Caldwell reasonably expended 117.56 hours, co-counsel Clay Fendley reasonably expended 30.20 hours, and paralegal Darlene Hogancamp reasonably expended 16.36 hours.[30] The Court makes one specific reduction and one overall reduction to these claimed hours.

The specific reduction comes from an entry that the District flagged in its briefing. The District points the Court to an entry Ms. Caldwell billed for 0.85 hours to fix an error in a pretrial disclosure.[31] The Court agrees with the District that it is not reasonable for Ms. Caldwell to bill for what appears to be a correction of her own error. Plaintiffs do not dispute this contention or give any context to justify counting this entry. Thus, the Court will remove the entry from Ms. Caldwell's time.

Now for the general reduction. After an extensive review of the underlying due process hearing decisions, Plaintiffs' declarations and time entries, and other IDEA cases cited in the briefing, the Court determines that an across-the-board 30% reduction in the time billed is appropriate. The Court makes this reduction for several reasons.

First, the Court finds that, although Plaintiffs were generally successful, their success was somewhat limited.[32] For example, of their three requests for compensatory education, Plaintiffs

---

rate for similar work in the community where the case has been litigated." *See supra* p. 5. Thus, the Court affords little to no weight to cases that were litigated in other states or under other civil rights statutes. Second, Plaintiffs point the Court to Ms. Caldwell and Mr. Fendley's unique experience litigating IDEA cases, their past success, and the challenges inherent in litigating these cases. *See generally* Pls.' Br. in Supp. of Pls.' Mot. for Att'y Fees and Costs (Doc. 19). The Court has thoroughly considered these arguments and the evidence accompanying them. But these arguments are indistinguishable from the arguments raised on Ms. Caldwell and Mr. Fendley's behalf in many of the cases (some cited above) where courts approved the same rates the Court approves today. The bottom line is that none of Plaintiffs' arguments (whichever bucket they fall into) move the needle any more today than they did in the bulk of past cases.

[30] *See* Pls.' Mot. for Att'y Fees and Costs (Doc. 18) at 2.

[31] *See* Def.'s Br. in Supp. of Def.'s Resp. to Pls.' Mot. for Att'y Fees and Costs (Doc. 21) at 8.

[32] *See, e.g.*, *A.W.*, 2023 WL 5959496, at *2 (reducing the hours claimed by Ms. Caldwell and Mr. Fendley because "Plaintiffs did not prevail on their disability discrimination claim[]"); *Jacksonville N. Pulaski Sch. Dist.*, No. 4:20-cv-

succeeded on one.[33] And private school placement was not granted until the second hearing, even though Plaintiffs asked for it in first hearing.[34] Further, in both administrative orders, Plaintiffs' disability discrimination claims (and similar retaliation claims) were dismissed.[35] The somewhat limited nature of Plaintiffs' success justifies a reduction (when considered along with the other factors discussed below).[36]

Second, based on the Court's knowledge, expertise, and experience concerning the time required to complete various legal tasks, the Court is confident that several tasks could have (and should have) been done in less time.[37] Third, the length of time spent on the administrative

---

00256, 2021 U.S. Dist. LEXIS 256673, at *6 (making a 40% overall reduction in part because of unsuccessful issues and limited success).

[33] *See* Ex. A (First Administrative Order) to Compl. (Doc. 1) at 34–35 (explaining that Parents had to withdraw one of their requests for an occupational therapy evaluation and failed to provide certain evidence related to their request to receive compensatory education for lost learning time).

[34] *Compare* Ex. A (First Administrative Order) to Compl. (Doc. 1) at 35 ("Parents' request for private placement tuition is **DENIED**." (emphasis in original)), *with* Ex. B (Second Administrative Order) to Compl. (Doc. 1) at 82 (granting a private school placement).

[35] *See* Ex. A (First Administrative Order) to Compl. (Doc. 1) at 35; Ex. B (Second Administrative Order) to Compl. (Doc. 1) at 82–83 (noting that the "Hearing Officer has no jurisdiction over disability discrimination claims.").

[36] The Court believes that the unsuccessful requests and claims are distinct enough from the successful requests and claims such that Plaintiffs should not be compensated for the unsuccessful requests and claims. *Cf. Emery*, 272 F.3d at 1046 (8th Cir. 2001) ("When a plaintiff has prevailed on some claims but not on others, the plaintiff may be compensated for time spent on unsuccessful claims that were related to his successful claims, but not for time spent on unsuccessful claims that were 'distinct in all respects from his successful claims.'" (quoting *Hensley v. Eckerhart*, 461 U.S. 424, 440 (1983))). In any event, even if the unsuccessful claims are related enough to the successful claims and requests that they could not be truly distinguished as unsuccessful, the Court would still have reduced the hours by the same percentage based on the other factors articulated in this Order.

[37] One of the most glaring of these entries is the exorbitant amount of time that appears to have been spent revising the second due process complaint. On April 9, 2024, Mr. Fendley billed 0.80 hours to prepare the second due process complaint. *See* Ex. C (Att'y Time Sheets and Table of Costs) to Pls.' Mot. for Att'y Fees and Costs (Doc. 18-3) at 3. On April 15, 2024, Mr. Fendley billed another 1.23 hours to review and revise that complaint and sent it to Ms. Caldwell for review and filing. *Id.* Those hours are reasonable. But, on May 21, 2024, Ms. Caldwell billed 5.82 hours to review and revise the complaint. *Id.* at 2. And, three days later, she billed another 1.00 hours to review and file the complaint. *See id.* It can't take Ms. Caldwell more than three times the amount of time to review and revise a complaint that it took Mr. Fendley to draft (and revise) the complaint. According to Mr. Fendley, he "review[s] the records provided by parents, research[es], and draft[s] the due process complaint for [Ms.] Caldwell to review, revise, and file." Ex. B (Decl. of Clay Fendley) to Pls.' Mot. for Att'y Fees and Costs (Doc. 18-2) ¶ 3. Mr. Fendley tells the Court that "[t]his allocation of labor is an efficient system that minimizes the amount of duplicative attorney time spent on cases." *Id.* It is not efficient (or reasonable) here.

There are numerous other examples of problematic billing. The Court will share just two for illustrative purposes. Mr. Fendley billed 1.40 hours to download time sheets on June 26, 2025. *See* Ex. C (Att'y Time Sheets and Table of

hearings (and the corresponding preparation time) could have been trimmed down given that (1) as explained above, Plaintiffs' could have narrowed the issues and relief sought more effectively and (2) much of the evidence and witnesses from the first hearing overlapped with the second hearing.[38] Accordingly, the Court reduces the hours billed by 30%.

Here's where that leaves us on hours. Theresa Caldwell's claimed 117.56 hours is first reduced to 116.71 because of the 0.85 hours that the Court excised from her timesheet.[39] And, reducing that number by 30%, Ms. Caldwell can reasonably claim 81.697 hours. Clay Fendley's

---

Costs) to Pls.' Mot. for Att'y Fees and Costs (Doc. 18-3) at 1. Again, it is not reasonable to bill close to an hour and a half for downloading time sheets. Ms. Hogancamp billed 3.17 hours to review the administrative record on March 6, 2025. *See id.* But it is unclear why Ms. Hogancamp needed to review the administrative record at all. There are no other entries from her after March 6, 2025, to explain what she did with the information she learned from her review. The only other entry from her after her review is on March 11, 2025, which states that she received the administrative record. *See id.* How Ms. Hogancamp could bill for receiving the record after she already reviewed it is concerning enough. Even more concerning though is that neither Mr. Fendley nor Ms. Caldwell ever explain what role Ms. Hogancamp plays in the federal portion of this case that would require her to review the administrative record.

[38] The Court finds that seven days of hearings, with a total of twelve witnesses (five of whom testified in both hearings) could have been cut down. The first hearing lasted four days and ten witnesses testified (including both Plaintiffs). *See, e.g.*, Ex. A (First Administrative Order) to Compl. (Doc. 1) at 14; Compl. (Doc. 1) ¶ 13. And the second hearing lasted three days and included testimony from seven witnesses (including both parents). *See, e.g.*, Ex. B (Second Administrative Order) to Compl. (Doc. 1) at 39. The Court is aware that several documents describe the second due process hearing as a four-day hearing. *See, e.g.*, Compl. (Doc. 1) ¶ 19; Def.'s Br. in Supp. of Def.'s Resp. to Pls.' Mot. for Att'y Fees and Costs (Doc. 21) at 4 (citing Compl. (Doc. 1) ¶ 19 and asserting that the second hearing lasted four days)). But the record and other documents before the Court make crystal clear that the second hearing only lasted three days. *See, e.g.*, Ex. C (Att'y Time Sheets and Table of Costs) to Pls.' Mot. for Att'y Fees and Costs (Doc. 18-3) at 2 (showing Ms. Caldwell billing three hearing days for the second due process hearing); Ex. B (Second Administrative Order) to Compl. (Doc. 1) at 40 (explaining that although the hearing officer thought the hearing would extend to four days, the hearing actually ended on the third day).

The Court acknowledges that Plaintiffs took several actions to reduce the time spent on each hearing, including the decision to cut down on the number of potential witnesses, asking that the record from the first administrative hearing be incorporated into the second hearing, and opting for briefing instead of closing arguments in the second hearing. *See* Ex. A (Decl. of Theresa Caldwell) to Pls.' Mot. for Att'y Fees and Costs (Doc. 18-1) ¶¶ 13–14 (explaining that the first due process hearing had 59 potential witnesses and the second due process hearing had 23 potential witnesses); *id.* ¶ 14 (noting that Ms. Caldwell suggested using the record from the first due process hearing as evidence in the second due process hearing); Ex. B (Second Administrative Order) to Compl. (Doc. 1) at 40 (noting that parties submitted briefing instead of closing arguments). Because of those actions, the Court does not fully accept the District's invitation to reduce Plaintiffs' requested fees by 50% to 60%. *See* Def.'s Br. in Supp. of Def.'s Resp. to Pls.' Mot. for Att'y Fees and Costs (Doc. 21) at 1. However, based on its experience conducting bench trials, the administrative hearing times in other IDEA cases, and the fact that much of the information in the two hearings overlapped, the Court agrees with the District that this case should have taken much less than seven total days to adjudicate. *See* Def.'s Br. in Supp. of Def.'s Resp. to Pls.' Mot. for Att'y Fees and Costs (Doc. 21) at 6–7. And although Plaintiffs explain why IDEA cases are generally complex, they do not explain why this case was especially difficult or needed to be lengthy.

[39] *See supra* p. 6.

originally-claimed 30.20 hours reduces by 30% to 21.14 hours.  Finally, Darlene Hogancamp's

claimed 16.36 hours are cut by 30% to 11.452 hours.

Multiplying the reasonable rates set above by the newly reduced hours, leads to the

following calculations:

Ms. Caldwell – 81.697 hours x $250 = $20,424.25

Mr. Fendley – 21.14 hours x $200 = $4,228.00

Ms. Hogancamp – 11.452 hours x $100 = $1,145.20

Added up, the lodestar is $25,797.45.  The Court is aware that the lodestar is just a starting

point that "may be adjusted 'upward or downward on the basis of the results obtained.'"[40]

Additionally, in IDEA cases, district courts are specifically instructed to reduce attorneys' fees if

(1) "the parent, or the parent's attorney . . . unreasonably protracted the final resolution of the

controversy;" (2) "the amount of the attorneys' fees . . . unreasonably exceeds the hourly rate

prevailing in the community for similar services by attorneys of reasonably comparable skill,

reputation, and experience;" or (3) "the time spent and legal services furnished were excessive

considering the nature of the action or proceeding . . . ."[41]   In this case, the Court believes the

lodestar as calculated needs no adjustment, especially in light of the reduction of hours set out

---

[40] *Dean v. Bradford Ests., LLC*, No. 4:19-CV-00748-BSM, 2020 WL 8642227, at *1 (E.D. Ark. Nov. 24, 2020) (quoting *Wheeler v. Mo. Highway & Transp. Comm'n*, 348 F.3d 744, 754 (8th Cir. 2003)).  District courts may also consider the factors identified in *Johnson v. Ga. Highway Express, Inc.*, 488 F.2d 714, 717–19 (5th Cir. 1974). *See Vines*, 9 F.4th at 855.  Those factors include:

> (1) the time and labor required; (2) the novelty and difficulty of the questions; (3) the skill requisite to perform the legal service properly; (4) the preclusion of employment by the attorney due to acceptance of the case; (5) the customary fee; (6) whether the fee is fixed or contingent; (7) time limitations imposed by the client or the circumstances; (8) the amount involved and the results obtained; (9) the experience, reputation, and ability of the attorneys; (10) the 'undesirability' of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases.

*Hensley*, 461 U.S. at 430 n.3 (citing *Johnson*, 488 F.2d at 717–19).

[41] 20 U.S.C. §§ 1415(i)(3)(F)(i)–(iii).

above.  To the extent either party argues otherwise, their arguments are rejected.  Accordingly, the Court awards Plaintiffs $25,797.45 in attorneys' fees.

      *c.  Costs*

As for costs, Plaintiffs request $1,696.34 for printing, binders, and a federal filing fee.[42] The District does not specifically challenge these costs, and the Court finds them to be reasonable. Accordingly, the Court grants Plaintiffs the full $1,696.34 in requested costs.

## CONCLUSION

For the reasons stated above, the Court GRANTS IN PART and DENIES IN PART Plaintiffs' Motion for Attorneys' Fees and Costs (Doc. 18).  The Court awards $25,797.45 in attorneys' fees and $1,696.34 in costs, for a total of $27,493.79.

IT IS SO ORDERED this 30th day of March 2026.

LEE P. RUDOFSKY
UNITED STATES DISTRICT JUDGE

---

[42] *See* Ex. C (Att'y Time Sheets and Table of Costs) to Pls.' Mot. for Att'y Fees and Costs (Doc. 18-3) at 5.

10